*Court of Common Pleas, Dauphin County, February 26th, 1867.*

SHICK *v.* THE PENNSYLVANIA RAILROAD COMPANY.

A mistake in entitling or numbering a suit will not affect the validity of the proceedings. A draft filed of land intended to be taken by a railroad company need not state the kind of buildings or other improvements upon it. When land was taken by a railroad company, a bond filed to secure the payment of its value, an appraisement made, and afterwards all the proceedings except the bond were set aside by the court, if the owner builds houses on the property to prevent the company from taking it, the latter will still be allowed to have it, and need not pay for such improvements.

BY THE COURT.—The Pennsylvania Railroad Company, being desirous to possess and occupy some of the land belonging to John M. Shick, for the use of its road, and being unable to agree for its purchase, on April 7th, 1863, filed its bond, approved by the court under section 12 of its charter law, conditioned as therein provided (see P. L. of 1846, 321), and took possession of a portion of the premises. Afterwards, to wit, at August Term, 1864, the company presented its petition to have viewers appointed to assess the damage; which was done, report made, and an appeal taken by Shick; also exceptions filed by him, on which, on February 26th, 1866, the whole proceeding was set aside for irregularity, except the bond, which was good and valid, and was suffered to "stand as security for the property to be taken, and the damages sustained thereby, when the same shall be lawfully determined, and the necessity of the appropriation established before the viewers." On November 19th, 1866, another bond was filed, conditioned as the former, as additional security. And on the same day a new petition was presented, reciting the former bond and all the subsequent proceedings, and asking for the appointment of viewers, which was made January 3d, 1867. Prior to this, to wit, on November 19th, 1866, Shick filed his objections to the proceedings of the company, but the same were overruled by the court, and viewers appointed as stated, to determine, among other things, many of the facts contained in those exceptions. On February 6th, 1867, additional exceptions were filed, stating that the proceedings were not properly entitled, but should have been to January Term, 1867, instead of August Term, 1864, and also that the draft or plot of land to be taken was incorrect, in not setting forth the houses erected thereon, and the land covered by the rails. The entitling or numbering the proceedings is of little moment. It is merely used as a means of enabling the officer to find the papers. In many counties, such cases, or petitions in the sessions, are neither entitled, numbered, or docketed.

From the form of the company's petition, it is evidently intended to be a continuation of the former proceeding; whether it

is or is not such, we need not decide; the question is unimportant. It is not necessary for the draft or plan of the ground to refer to the character of the improvements thereon, whether covered with houses or grass, used for a grain-field or brick-yard. The object is to designate the land intended to be taken, by filing an accurate survey thereof. Houses, excepting those occupied as homesteads by the owner of the land, are not protected from the railroad company (section 3, act of February 19th, 1849). Shick avers that after the former proceedings were set aside, and before the present were commenced, he erected a number of tenement houses on the land proposed to be taken. The company says that they were built in bad faith, when the owner knew that it required the ground, and had taken the necessary preliminary steps to possess itself of it. The first steps were unquestionably taken in 1863. An effort was made to purchase; that failing, a bond was filed, probably a survey made, and a set of tracks or track laid for a siding. The filing of an approved bond for the payment of damages, gives to the company the right to enter upon and occupy the ground, provided it is required by the railroad company for a purpose within the provisions of its charter. That question we have already said in a former opinion (Shick v. The Penna. R. R. Co., 1 Pearson, 259) must be determined by the viewers. Having then the right of entry, subject to that determination, and having entered and indicated the land to be taken, if the owner improves it afterwards, he does it at his peril. If the viewers decide that the company is not authorized by law to take it for the purpose proposed, the owner will hold it. Should they determine otherwise, his improvements were made in error, and he cannot recover compensation for them. It may be said that this might operate hardly on landowners, by tying up their property from use for an indefinite time, as the company may not ask for the appointment of viewers. If it does not, the owner may petition; he has the same right as the company, and the proceeding is quite summary; a few weeks will generally settle the question. It is urged, however, that as all of the company's proceedings except the bond, were set aside on February 26th, 1866, and no further measures taken by it until November 19th, of the same year, when a new bond was filed, and petition presented, the landowner had every reason to believe that the company had abandoned the claim, and therefore built his houses in good faith. That question is to be decided by the viewers under all of the circumstances. If the bond also had been vacated for irregularity, it would have added great force to the argument, but it was not. It would also have been strengthened by abandoning or taking up the tracks, if on this ground. Neither being done, it is a little difficult to see how the landowner could have been misled. We are disposed to leave that question to the viewers, who will determine whether

the houses were built in good faith, or to keep the company from taking the land, or obliging it to make additional payments. If done *malâ fide*, nothing will be allowed for the houses, should the viewers decide that the company is authorized to take the land; and if any sum is assessed for the buildings, it must be stated separately. A new bond was filed when the second petition was presented, but that was perhaps because the first was for too small a sum, provided the whole property should be taken. If the viewers disallow the cost of the houses so erected, they may, if they see proper, ascertain and state their value, with their reasons for disallowing the claim, so that this and the Supreme Court may have the whole subject presented by the report.

These exceptions are overruled.

*Lamberton, Alricks, and Alleman, for plaintiff.*

*Kunkel, for defendant.*